RENDERED:  APRIL 1, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1774-MR

PIONEER PLAZA OF
GEORGETOWN, LLC N/K/A
AUGUST PROPERTIES, LLC                                    APPELLANT

APPEAL FROM SCOTT CIRCUIT COURT
v.        HONORABLE JEREMY M. MATTOX, JUDGE
ACTION NO. 18-CI-00235

GEORGETOWN APOTHECARY,
PLLC D/B/A GEORGETOWN
PHARMACY; BRITTANY COX; AND
JUSTIN BELL                                               APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, JONES, AND K. THOMPSON, JUDGES.

THOMPSON, K., JUDGE:  Pioneer Plaza of Georgetown, LLC (Pioneer) appeals

an order of the Scott Circuit Court granting in part and denying in part its motion

for summary judgment against Georgetown Apothecary, PLLC d/b/a Georgetown

Pharmacy, Brittany Cox, and Justin Bell (collectively Georgetown). We affirm because Pioneer has failed to establish it is entitled to any further rent.

The underlying facts are not in dispute. Pioneer and Georgetown entered into a commercial lease agreement on or about May 22, 2013. The lease expired after three years, but prior to expiration, the parties entered into a one-year extension from June 30, 2016 through June 30, 2017. The extension agreement contained a clause allowing Georgetown to terminate the lease extension at six months with three months' notice and payment of the remaining six months' rent. Georgetown gave the required three-month notice and vacated the premises on either December 31, 2016, or January 1, 2017. It paid Pioneer for the remaining rent balance through June 30, 2017.

Soon after Georgetown moved out of the space, it informed Pioneer that one of the keys had been lost. The parties emailed back and forth regarding both the keys and repairs to the space that remained incomplete, but they could not agree on an amount for the repairs. In January 2018, Pioneer leased half of the space to a new tenant at $700.00 per month (half the amount of rent Georgetown had previously paid).

Pioneer filed the underlying complaint in the Scott Circuit Court on May 9, 2018. It sought: (1) unpaid rent in the amount of $16,800.00 ($1,400.00 per month from January 1, 2017 – December 1, 2017); (2) $700.00 per month

unpaid rent from January 1, 2018, continuing until repairs are completed and keys returned; (3) common area maintenance fees through 2017, and the half of the fees from 2018 forward; (4) $3,250.00 for repairs to the space; and (5) return of the keys or the value of the keys.

Georgetown admitted it owed for repairs to the property, but disputed the amount owed. Georgetown also admitted it owed common area maintenance fees through 2017 and further offered to re-key the premises due to the lost key.

Georgetown filed an offer of judgment on December 13, 2018, in the amount of $2,500.00. The offer was apparently rejected by Pioneer, who filed a motion for summary judgment on July 19, 2019.[1] The motion for summary judgment sought relief for all claims contained in the complaint, but Pioneer also, for the first time, claimed it was due "a 500% charge on the amount of the rents due and owing[.]" This was due, according to Pioneer, because by failing to return the key and pay for repairs, Georgetown became a holdover tenant.

On September 13, 2019, an order was entered granting the motion for summary judgment in part. The circuit court awarded Pioneer common area maintenance fees through 2017 and $3250.00 for repairs to the space. It also

---

[1] Pioneer argues tangentially that the circuit court entered an order granting its motion for summary judgment on the eve of trial and that "[h]ad the Court not proceeded in this manner, the parties likely would have resolved the case as a negotiated settlement was imminent." However, Pioneer never withdrew its motion for summary judgment or otherwise informed the circuit court that the parties were in settlement negotiations.

ordered Georgetown to rekey, using Lewis Locksmith (the locksmith designated in the lease), at Georgetown's expense.

However, the circuit court rejected Pioneer's claims for additional rent. The circuit court held that, under the unambiguous terms of the lease, Pioneer was not entitled to rent after June 30, 2017, and Pioneer was not entitled to any further rent as Georgetown had already paid the rent due for the prior period. Apparently believing this had sufficiently disposed of Pioneer's claims for additional damages, the circuit court did not address Pioneer's claim regarding its right to a surcharge for a holdover tenant.

Pioneer filed a motion to alter, amend, or vacate the order, again claiming that, not only was it due additional rent, but also an additional 500% surcharge on each month of rent. The circuit court denied the motion to alter, amend, or vacate, explaining that for Pioneer "[t]o argue that a lost set of keys merits five times the base monthly rent until the lost keys are returned is irrational and contrary to the agreement." The circuit court also determined that "[Pioneer] cannot refuse to make the repairs and continue to charge the rent at five hundred percent."

Pioneer's arguments on appeal focus on its contention that it is due additional rent.[2] Pioneer argues that Georgetown owes 500% of the monthly rent due each month because by failing to repair and return the key, it became a holdover tenant, or alternatively it argues that Georgetown owes the regular cost of ongoing rent for these failures. Pioneer also argues that additional rent is due because the payment of rent due through June 30, 2017 was not rent but instead a fee to vacate, with additional rent still due.

"The standard of review on appeal of a summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky.App. 1996). Summary judgment "should only be used 'to terminate litigation when, as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor and against the movant.'" *Steelvest, Inc. v. Scansteel Service*

---

[2] We note that Pioneer's arguments are largely unpreserved pursuant to Kentucky Rules of Civil Procedure (CR) 76.12(4)(c)(v). CR 76.12(4)(c)(v) "requires appellate briefs to contain references to the record showing that an issue was preserved for review and in what manner, this Court has previously noted the importance of the firmly established rule that the trial court should first be given the opportunity to rule on questions before they are available for appellate review[.]" *Keco v. Ayala*, 592 S.W.3d 753, 757 (Ky.App. 2019) (internal quotation marks and citation omitted). We nevertheless proceed with review. *See Hallis v. Hallis*, 328 S.W.3d 694, 696 (Ky. App. 2010) (citing *Elwell v. Stone*, 799 S.W.2d 46, 47 (Ky.App. 1990)).

*Center, Inc.*, 807 S.W.2d 476, 483 (Ky. 1991) (quoting *Paintsville Hospital Co. v. Rose*, 683 S.W.2d 255, 256 (Ky. 1985)).

Because summary judgments involve no fact-finding, we review the circuit court's decision *de novo.  3D Enters. Contr. Corp. v. Louisville & Jefferson County Metro. Sewer Dist.*, 174 S.W.3d 440, 445 (Ky. 2005).  Further, this appeal involves the interpretation of a commercial lease agreement, *i.e.*, a contract.  The construction and interpretation of a contract is also a matter of law subject to *de novo* review.  *Community Trust Bancorp, Inc. v. Mussetter*, 242 S.W.3d 690, 692 (Ky.App. 2007); *Cinelli v. Ward*, 997 S.W.2d 474, 476 (Ky.App. 1998).

We start by disposing of Pioneer's assertion that it is due 500% of the base rent, or $7,000.00 per month from January 1, 2017 until the keys are returned and necessary repairs are made.  CR 8.01(1) states:

> A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (a) a short and plain statement of the claim showing that the pleader is entitled to relief and (b) a demand for judgment for the relief to which he deems himself entitled.  Relief in the alternative or of several different types may be demanded.

We acknowledge that our highest Court has interpreted the requirements of CR 8.01 liberally, holding "[i]t is not necessary to state a claim with technical precision under this rule, as long as a complaint gives a defendant fair notice and identifies the claim." *Grand Aerie Fraternal Order of Eagles v.*

-6-

*Carneyhan*, 169 S.W.3d 840, 844 (Ky. 2005). However, Pioneer's complaint gave Georgetown no notice whatsoever that it claimed it was owed $7,000.00 per month from January 2017 forward. Pioneer never requested permission to amend its complaint to include this claim pursuant to CR 15.01. Indeed, the first time Pioneer mentioned it was in a two-sentence paragraph in the middle of its memorandum in support of its motion for summary judgment.

As a matter of law, liability could not be found, and damages could not be awarded on a claim that was never pled. *See Belcher v. Hunt*, 248 S.W.2d 717, 719 (Ky. 1952) (explaining that judgments "must conform to the pleadings" or they will be "void as to the excessive relief granted").

Additionally, we believe this claim lacks all merit. The basis of Pioneer's reasoning for charging 500% rent is found in Article VI, Section 6.09 of the lease. It states, in relevant part:

> At the termination of the Lease, [Georgetown] shall surrender the demised premises in good condition and repair, and shall surrender all keys for the Leased Premises to [Pioneer] and shall inform [Pioneer] of all combinations on locks, safes and vaults, if any, in the Leased Premises. Should [Georgetown] hold over without [Pioneer's] written consent, [Georgetown] agrees to pay five (5) times the base monthly rent for each month or partial month in holdover.

Although the same paragraph in the lease discusses Georgetown's duties upon surrendering the lease and what will occur if Georgetown holds over,

we do not believe Georgetown's failure to repair or surrender all keys makes it a holdover tenant. The term holdover is not defined in the lease, so we will give it its ordinary definition. As defined in Black's Law Dictionary (11th ed. 2019), under tenant, a "holdover tenant" is "[s]omeone who remains in possession of real property after a previous tenancy (esp. one under a lease) expires, thus giving rise to a tenancy at sufferance."

This is consistent with the how a "hold over" tenant is contextually defined in the landlord-tenant holdover statute. *See* Kentucky Revised Statutes (KRS) 383.160 (explaining that if a tenant does not secure the right by express contract "the right to remain longer" after the expiration of the lease that the tenant "hold[s] over" and certain consequences follow).

It is undisputed that Georgetown vacated the premises. Additionally, Pioneer failed to make any argument that it was precluded from accessing the property, rekeying, and making repairs itself so that it could rent out the other half of the space.

There is nothing in the language of the lease, besides the proximity of the sentences related to Georgetown's duties upon the termination of the lease to the provisions of what will happen should Georgetown hold over, to make us interpret the lease as Pioneer has. There is no basis for concluding that a holdover tenant includes a tenant who has vacated the space but has not returned a key

and/or has failed to pay for repairs. If Pioneer wished to redefine the term holdover tenant to include a tenant who failed to satisfy these requirements, it needed to specifically define the term holdover to include these actions.

As we have rejected that Georgetown is a holdover tenant, we agree with the circuit court that no additional rent could be due based on Georgetown failing to return all the keys and failing to make repairs. We agree that the circuit court properly determined that the appropriate remedy for the lost key was for Georgetown to rekey the premises at its own expense with the locksmith specified in the lease.

As to the failure to repair, Article V, Sections 5.01 and 5.02 both state that, in relation to fixtures installed and alterations to the space, respectively, "[Pioneer] may restore and repair unit to original condition with the cost to be paid by [Georgetown]." Nowhere does the lease indicate that rent will continue to accumulate if Pioneer puts off making any such repairs. Although Pioneer attempted to reach an agreement with Georgetown regarding the cost of repairs before filing a lawsuit, the terms of the lease do not require that Georgetown agree to the cost of the repairs, only that it pay the costs incurred by Pioneer. The circuit court awarded Pioneer the cost of said repairs pursuant to the terms of the lease and we discern no reason for disturbing its order.

Pioneer finally argues that the money which Georgetown paid to vacate the property early, which was equivalent to the rent due for six months, was not applicable to any rent owed by Georgetown, but rather, is "for the privilege of exercising the right to cancel the lease early." We disagree.

Although the same terms of the original lease applied, when the parties extended the lease, they additionally agreed that

> [Georgetown] shall have the one time right to vacate the property at six months, with a three month notice, of their intent to exercise this option. The remaining balance of six months shall be due and payable, including the remaining common area charges based on the last amount paid for this charge.

Nowhere in the agreement does it state that the remaining balance paid by Georgetown is applicable to anything other than rent. We agree with the circuit court that Georgetown paid rent through June 30, 2017, and Pioneer cannot, under the terms in the original lease or the agreement to extend the lease, collect an additional $1,400/month in rent from January – June, 2017.

For the foregoing reasons, the judgment of the Scott Circuit Court is affirmed.

ALL CONCUR.

-10-

BRIEFS FOR APPELLANT:

Noel Mark Botts
Harrodsburg, Kentucky

BRIEF FOR APPELLEES:

Richard M. Rawdon, Jr.
Georgetown, Kentucky